UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-2142 (RC) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| FACEMASKCENTER.COM, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

## I. INTRODUCTION

This action arises out of an investigation by Homeland Security Investigations, the Internal Revenue Service, and the Federal Bureau of Investigation into potential fraud surrounding the sale of personal protection equipment ("PPE") during the COVID-19 pandemic. Plaintiff United States of America ("the Government") seeks the forfeiture of one website, FaceMaskCenter.com, and four related Facebook pages (collectively, "Defendant Properties") for their alleged involvement in the unlawful sale of PPE and the subsequent use of those proceeds to support and finance terrorism. No claimant to the assets has responded to the complaint, and the Clerk of the Court entered default on February 9, 2021. The Government now asks this Court to enter a default judgment against the Defendant Properties. For the reasons set forth below, the Court grants this motion.

## II. FACTUAL BACKGROUND

This case involves the property of an alleged facilitator for a Foreign Terrorist Organization ("FTO"), Murat Cakar. Cakar has received money from individuals that later pled guilty to providing financial support to the Islamic State of Iraq and the Levant ("ISIS"). *See*

Compl. ¶¶ 12–14, ECF No. 3.  Additionally, a confidential source has identified Cakar as an ISIS facilitator responsible for managing select ISIS hacking operations.  *Id.* ¶ 15.  One such operation was the creation and upkeep of the Defendant Properties.  *Id.* ¶¶ 15, 27–33.  The Government alleges that the Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(G)(i).  The Court will summarize the relevant law and briefly describe the alleged scheme.

### A.  Statutory Framework

Federal law makes "[a]ll assets, foreign or domestic[,] of any individual, entity, or organization engaged in planning or perpetrating any . . . Federal crime of terrorism" subject to forfeiture to the United States.  18 U.S.C. § 981(a)(1)(G)(i).  Numerous offenses may qualify as a "Federal crime of terrorism" so long as they are "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."  *Id.* § 2332b(g)(5).  One such offense is "knowingly provid[ing] material support or resources to a foreign terrorist organization."  *See id.* § 2339B(a)(1); *see also id.* § 2332b(g)(5)(B)(i).  A "terrorist organization" for the purposes of that offense is any organization designated as such under section 219 of the Immigration and Nationality Act.  *Id.* § 2339B(g)(6).[1]

This statutory scheme "empowers the government to seek the forfeiture of property outside the United States, which may have never touched the United States.  The broad expanse of this language is for forfeiture actions to reach all property of terrorist organizations."  *United States v. One Gold Ring with Carved Gemstone*, No. 16-CV-2442, 2019 WL 5853493, at *1 (D.D.C. Nov. 7, 2019).

---

[1] The Secretary of State has designated ISIS an FTO.  *Foreign Terrorist Organizations*, U.S. Dep't of State, https://www.state.gov/foreign-terrorist-organizations/ (last visited Apr. 22, 2021).

## B. Relevant Facts and Procedural History

The Government outlines a scheme in which the Defendant Properties (owned and operated by Cakar) used fraudulent advertising to sell PPE, proceeds of which likely benefitted ISIS due to Cakar's position as an ISIS facilitator.

Due to the COVID-19 pandemic, global supplies of PPE are limited. Compl. ¶ 9. The U.S. Department of Health and Human Services designated certain PPE as "scarce materials," so the United States took steps to stockpile it. *Id*. ¶¶ 7, 11. N95 respirator masks and Dupont Tyvek suits are examples of critical PPE for which there is a limited supply. *Id*. ¶¶ 9–11.

FaceMaskCenter.com ("the Website") purports to sell a variety of U.S. Food and Drug Administration ("FDA") certified PPE, including N95 masks and Dupont Tyvek suits. *Id*. ¶ 17. That and many other assertions the Website makes are false. The Website says it was launched in 1996, but the domain was registered in 2020. *Id*. ¶¶ 18–19. It also states that it is "owned and operated by sanitary experts," but Cakar (as far as the Court knows) holds no credentials to that effect. *Id*. ¶ 19. The N95 masks sold on the Website are manufactured by a Turkish supplier and are not approved by the FDA. *Id*. ¶ 22. And despite a shortage of Dupont Tyveks suits that has led other suppliers to restrict sales, the Website does not limit consumers' orders. *Id*. ¶ 26.

The four Facebook pages ("the Facebook Pages") are either registered by or linked to Cakar. *Id*. ¶¶ 27–29, 33. Cakar registered a Facebook Page that is associated with the Website. *Id*. ¶ 27. And another of the Facebook Pages is Cakar's own Facebook profile, which he used to create the remaining two Facebook Pages. *Id*. ¶ 33. The Facebook Pages post advertisements for the Website and its sale of PPE. *Id*. ¶¶ 27, 32.

The Government filed a verified complaint on August 5, 2020, for forfeiture *in rem* against the Defendant Properties, claiming the Website and Facebook Pages were used in the

support and financing of terrorism.  *See* Compl.  On August 12, 2020, this Court issued a Warrant for Arrest *In Rem*, *see* ECF No. 4-2, and the Government acted on it the next day, Arrest Warrant *In Rem* Return, ECF No. 9.  The Government provided public notification of this forfeiture online for at least thirty days beginning on November 4, 2020.  *See* Decl. of Publication, ECF No. 11.  It also attempted direct service via email to Cakar, the sole potential claimant of the Defendant Properties, on or about December 4, 2020.  *See* Aff. Supp. Default ¶ 5, ECF No. 12.  The Government attempted to reach him at two separate email addresses.  *Id.*  No one has filed a claim.  *Id.*

After the Clerk of the Court entered a default as to the Defendant Properties, Default, ECF No. 14, the Government filed this motion for default judgment seeking forfeiture under 18 U.S.C. § 981(a)(1)(G)(i).  *See* Pl.'s Mem. Supp. Mot. Default J. ("Pl.'s Mot."), ECF No. 15-1.

### III.  LEGAL STANDARD

There is a two-step process for default judgment.  *See* Fed. R. Civ. P. 55; *see also Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr., Inc.*, 273 F. Supp. 3d 177, 179 (D.D.C. 2017).  First, the plaintiff must "request[] that the Clerk of the Court enter default against a party who has 'failed to plead or otherwise defend'" the action.  *Bricklayers*, 273 F. Supp. 3d at 179 (quoting Fed. R. Civ. P. 55(a)).  The entry of default "establishes the defendant's liability for the well-pleaded allegations of the complaint."  *United States v. Twenty-Four Cryptocurrency Accts.*, 473 F. Supp. 3d 1, 4 (D.D.C. 2020).  Second, "the party must move for entry of default judgment and, upon the party's request, allow the court 'to enter or effectuate judgment.'"  *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte. Ltd.*, 368 F. Supp. 3d 10, 17 (D.D.C. 2019) (quoting Fed. R. Civ. P. 55(b)).

Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id.* (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)); *see also Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 965 (D.C. Cir. 2016). But a defendant's failure to respond or appear "do[es] not automatically entitle plaintiff to a default judgment." *Velmur*, 368 F. Supp. 3d at 17 (alteration in original) (quoting *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 26 (D.D.C. 2008)). Instead, the complaint must state a claim for relief in order for the plaintiff to be entitled to default judgment. *Id.* Stated differently, "[d]efault establishes the defaulting party's liability for the well-pleaded allegations of the complaint" but not for insufficiently pleaded ones. *Id.* (alteration in original) (quoting *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011)).

## IV.  ANALYSIS

The Government asks this Court to authorize the forfeiture of the Defendant Properties. Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions governs *in rem* civil forfeiture actions. *See* Fed. R. Civ. P. Supp. R. G. It contains notice requirements and substantive pleading requirements. *See* Fed. R. Civ. P. Supp. R. G(2), (4). Because the Government has properly notified all interested parties and sufficiently alleged that the Defendant Properties are subject to forfeiture, its motion for default judgment is granted.

### A.  Notice

Under Supplemental Rule G, the government must (1) publish public notice of a forfeiture and (2) provide direct notice to potential claimants of the property to be forfeited. Fed. R. Civ. P. Supp. R. G(4)(a), (b). One option for public notice is publication on an official

government forfeiture website for at least thirty consecutive days. Fed. R. Civ. P. Supp. R. G(4)(a)(iii)–(iv). The publication should "describe the property with reasonable particularity," "state the times . . . to file a claim and to answer," and "name the government attorney to be served with the claim and answer." Fed. R. Civ. P. Supp. R. G(4)(a)(ii). In addition to public notice, the government is required to "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice "must be sent by means reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(A). But the rule requires only "that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 47 (D.D.C. 2018) (quoting *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005)).

Here, the Government has complied with Supplemental Rule G's notice requirement. It publicized the forfeiture on its official forfeiture website for thirty consecutive days starting November 4, 2020. Decl. of Publication; Aff. Supp. Default ¶ 6. The publication provided the URL address for all the Defendant Properties, provided a date by which interested parties were required to file a claim, and identified the attorney to be served with a claim. *See* Decl. of Publication. No claims were filed in response to the publication by the deadline. Aff. Supp. Default ¶ 5; *see also* Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B) (requiring any claim to be filed "no later than 30 days after final publication of . . . legal notice under Rule G(4)(a)"). Accordingly, the Government has satisfied its obligation to provide public notice.

The Government has also complied with Supplemental Rule G's direct notice requirement. It sent direct notice by email to Cakar, the sole potential claimant at two different

6

email addresses.  Aff. Supp. Default ¶ 5.  Email is an appropriate means of providing notice when "the case involves international defendants whose locations are hard to pin down and the nature of the crimes necessarily entails some degree of cyber-proficiency on the part of the Defendant Properties' owners."  *Twenty-Four Cryptocurrency Accounts*, 473 F. Supp. 3d at 6.  The Government's publication on its forfeiture website and emails to potential claimants thus satisfy Supplemental Rule G's notice requirements.  *See United States v. $56,634 in U.S. Currency on Deposit in Banesco Int'l, Pan.*, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (holding that the Government provided sufficient notice when it posted public notice of the forfeiture online and attempted, but failed, to obtain contact information for the owners of the funds at issue).

### B. Adequacy of the Complaint

Along with its notice requirements, "Supplemental Rule G sets the specifications of a complaint in an *in rem* forfeiture action."  *Mingzheng*, 324 F. Supp. 3d at 45.  The complaint must (1) "be verified," (2) state the grounds for jurisdiction and venue, (3) "describe the property with reasonable particularity," (4) "identify the statute under which the forfeiture action is brought," and (5) "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Fed. R. Civ. P. Supp. R. G(2).  Courts consider those requirements to establish a "higher standard of pleading" than that imposed by Federal Rule of Civil Procedure 8.  *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008).  Nevertheless, Rule 8 "may help to clarify when a civil forfeiture complaint" states a claim.  *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 (S.D.N.Y. 2010).

The first four requirements for a forfeiture complaint are largely formal and the Government meets them here.  The complaint is verified; it identifies the basis for jurisdiction

and venue; it describes the properties at issue through their URLs, images, and descriptions; and it identifies the provision under which forfeiture is sought, 18 U.S.C. § 981(a)(1)(G)(i). *See* Compl. ¶¶ 2–4, 16–33, 37.

The fifth requirement is more substantive; it requires the Government to establish the legal basis for its claims. *See Mingzheng*, 324 F. Supp. 3d at 51. Here, the Government claims as its legal basis 18 U.S.C. § 981(a)(1)(G)(i), which subjects to forfeiture "[a]ll assets, foreign or domestic, of any individual, entity, or organization engaged in planning or perpetrating any . . . Federal crime of terrorism . . . and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization." It claims that the Defendant Properties are forfeitable because their owner, Cakar, was an ISIS facilitator. Compl. ¶¶ 5, 12–33. Because Cakar "knowingly provide[d] material support or resources to a foreign terrorist organization," 18 U.S.C. § 2339B(a)(1), and that is a "Federal crime of terrorism," *id.* § 2332b(g)(5), the Government says the Defendant Properties fall neatly within the forfeiture statute, 18 U.S.C. § 981(a)(1)(G)(i). To secure forfeiture of the Defendant Properties, the Government need only "allege[] sufficient facts to support a reasonable belief that [it] would be able to show at trial by a preponderance of the evidence that" its theory is correct. *Mingzheng*, 324 F. Supp. 3d at 51. The standard is "not particularly onerous," *id.*, and the Government satisfies it here.

The Government first alleges that Cakar is a facilitator for ISIS, an FTO. Compl. ¶¶ 5, 12–15. It says that an individual who pled guilty to providing financial support to ISIS sent $100,000 to one of Cakar's aliases. *Id.* ¶¶ 12–14. It also points to a confidential informant who told authorities that Cakar was responsible for managing certain hacking operations for ISIS. *Id.* ¶ 15. These allegations suggest that the Government could show at trial that Cakar provided material support to ISIS.

The Government then alleges that Cakar owned and operated the Defendant Properties. *Id.* ¶¶ 27–29, 33.  It asserts that Cakar registered or created each of the Facebook Pages, including the official Facebook Page for the Website.  *Id.*  According to the Government, the Website fraudulently purports to sell PPE.  It specifies multiple inconsistencies in the Website's advertisements (discussed above) to support its allegation of fraud.  *Id.* ¶¶ 16–26.  Posts on the Facebook Pages promoted the Website.  *Id.* ¶¶ 27, 32.  Ultimately, the Government suggests that revenue generated through this fraudulent scheme supported ISIS's terrorist activities.  *Id.* ¶ 1.  In any case, the Government has shown that it could likely demonstrate at trial that the Defendant Properties belonged to Cakar, who provided material support to an FTO.

Because the Government has put forth allegations indicating that the Defendant Properties are those of an individual perpetrating a "Federal crime of terrorism," the Defendant Properties are subject to forfeiture.  *See* 18 U.S.C. § 981(a)(1)(G)(i).

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment (ECF No. 15) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: April 22, 2021                                                                  RUDOLPH CONTRERAS
                                                                                              United States District Judge